LE MENSE, Special Administratrix, Plaintiff and Appellant,
 v. THIEL, Defendant: EMPLOYERS MUTUAL LIABILITY
 INSURANCE COMPANY, Defendant and Respondent.

*October 1—October 27, 1964.*

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

For the respondent there was a brief by *Clark, Rankin, Nash & Spindler* of Manitowoc, and oral argument by *John M. Spindler.*

GORDON, J. The issue in this case relates to the following words affecting coverage under an automobile insurance policy: "furnished for the regular use . . . ." On a motion for summary judgment, the trial court dismissed the complaint against the insurer, having concluded that the automobile in question was in fact furnished for the regular use of the driver, Mr. Thiel.

There are three strings to the appellant's bow. She contends that the evidence demonstrates that the car was not "furnished" to Mr. Thiel. Secondly, she argues that at the time of the accident Mr. Thiel's use of the car was not "regular use," as that expression is used in the policy. Thirdly, she urges that a California case is factually similar to the instant case and should be given great weight by this court. *Pacific Automobile Ins. Co. v. Lewis* (1943), 56 Cal. App. (2d) 597, 132 Pac. (2d) 846.

The contention that the automobile was not "furnished" to Mr. Thiel is not persuasive. Our examination of the record convinces us that it was contemplated that Mr. Thiel would use this car for his transportation to Mr. Mathys' wedding and that he would use it thereafter for a fishing trip. While Mr. Mathys may have desired to have the car in his wedding parade, and while it was Mr. Mathys who presented the matter to the owner, there is no hint that anybody but Mr. Thiel was to drive the car or have control of it. The contention that the car was not "furnished" to Mr. Thiel is simply untenable.

The meaning of the words "regular use" in an automobile insurance policy such as is involved here is one that has frequently been before the courts. Obviously, each case which arises under this clause must turn on its own peculiar facts. On each end of the spectrum are the easy cases. If the use of the auto is sporadic and rigidly restricted, there is coverage under the policy. At the other end of the spectrum are those cases in which the use is unqualified and continuous; in these cases the denial of coverage is obvious. The doubtful cases are those in the middle. In our opinion, the instant case polarizes toward that end of the spectrum where the use of the auto is unlimited and regular.

Mr. Keune was in the used-car business. Mr. Thiel stated that he "could drive anything that was available there." There was always one of Mr. Keune's automobiles available to him. He was not only free to use one of his employer's cars for business, but also he was free to take one of the cars home at night. The Chrysler car in question was used by Mr. Thiel 80 percent of the time. He kept it in the garage at his house for lengthy periods. Mr. Thiel did not own a car himself and did not frequently use his grandfather's car.

Mr. Thiel was not specifically required to ask permission to use one of Mr. Keune's cars. However, the appellant

argues that Mr. Thiel did in fact seek permission for the trip in question. When Mr. Mathys proposed taking the car to the wedding, Mr. Thiel told him that "he would have to talk to Carl [Keune] to use it for that." We believe that this refers to the use of this Chrysler convertible in the wedding parade rather than the use of the car as transportation for Mr. Thiel to the place of the wedding.

The appellant stresses the contention that Mr. Thiel's right to the regular use of one of the cars was confined to the Manitowoc area. We conclude that there is no valid basis for drawing the line at the county limits. When asked to describe his understanding regarding personal use of a car outside the county, Mr. Thiel responded:

"I wouldn't have to ask, I don't believe, but I believe I would say something to him that I was going or something so he knew."

Mr. Thiel also stated that Mr. Keune had never requested that Mr. Thiel should obtain permission before taking the car out of town for pleasure. In our opinion, the fact that Mr. Thiel may have felt it desirable to "say something" when he took one of Mr. Keune's cars outside the county does not warrant the conclusion that a use outside the county would be other than regular in light of all the other circumstances of this case.

*Pacific Automobile Ins. Co. v. Lewis* (1943), 56 Cal. App. (2d) 597, 132 Pac. (2d) 846, lends support for the appellant's position. The employee in that case was a used-car salesman in San Diego. He and the other employees were given the use of three automobiles which had been set aside as demonstration models. He drove the cars during the daytime; about six nights a month he had their use for personal matters. The employees had to speak up when they wanted to use the cars, since there were more employees than there were automobiles available. The agency did not

encourage the personal use of cars but permitted it. The employee involved in that case testified that he never previously had taken an automobile outside the San Diego vicinity. The accident occurred when he drove to Pomona for personal reasons, having told his employer where he was going. On these facts, the lower court found that the car was not furnished for "regular use," and this was affirmed on appeal.

The closeness of the facts between the California case and the case at bar is apparent. We do not, however, deem it appropriate to apply the California court's conclusion to the case at bar. The facts resemble one another, but they are not squarely alike. For example, Mr. Thiel had far greater freedom of use of his employer's automobiles than did the employee in the California case. There was much broader availability of the automobiles and much greater frequency of use by Mr. Thiel than was involved in the California case. In our opinion, Mr. Thiel's use of the car was practically unlimited; this is true even though Mr. Thiel may have felt it advisable as a matter of consideration to let his employer know when he was taking the car outside the county.

The availability of the car and the frequency of its use were far more restricted in the California case. In addition, we observe that the appellate court in California suggested that it felt foreclosed by the trial court's construction. At page 601, the California court said:

"A question of fact is presented which calls for an interpretation of the language of the policies relating to the facts involved. That language may be reasonably interpreted as intending to provide for a regular use at the time and place in question, and not for such an exceptional and single use by special permission as here appears. The court having adopted this construction, and this being a reasonable one, it cannot be overthrown even if it should appear that another construction would have been equally tenable."

In *Aler v. Travelers Indemnity Co.* (D. C. Md. 1950), 92 Fed. Supp. 620, 623, the court discussed the general purposes of this type of clause in an automobile insurance policy and stated that it is designed:

". . . to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so."

We have already indicated that each case involving regular use will turn on the peculiar facts of such case. Therefore, we will not attempt to analyze or apply the following cases which have also explored the meaning of "regular use:" *Whaley v. Great American Ins. Co.* (1963), 259 N. C. 545, 131 S. E. (2d) 491; *Palmer v. Glens Falls Ins. Co.* (1961), 58 Wash. (2d) 88, 360 Pac. (2d) 742; *Throckmorton v. Le Blanc* (La. App. 1961), 131 So. (2d) 231; *Embody v. Le Blanc* (La. App. 1961), 131 So. (2d) 225; *Sperling v. Great American Indemnity Co.* (1960), 7 N. Y. (2d) 442, 199 N. Y. Supp. (2d) 465, 166 N. E. (2d) 482; *Home Ins. Co. v. Kennedy* (1959), 52 Del. 42, 152 Atl. (2d) 115; *Iowa Mut. Ins. Co. v. Addy* (1955), 132 Colo. 202, 286 Pac. (2d) 622; *Farm Bureau Mut. Automobile Ins. Co. v. Marr* (D. C. N. J. 1955), 128 Fed. Supp. 67.

In our opinion, the trial court correctly concluded that Mr. Thiel had been furnished the instant car for his regular use.

*By the Court.*—Judgment affirmed.