Ricky D. STEPHENSON, Individually and as the Personal Representative for the Estate of Kathy M. Stephenson, Plaintiff-Appellant,†

v.

UNIVERSAL METRICS, INC., Ohio Casualty Insurance Company and West American Insurance Company, Defendants-Respondents,†

John H. KREUSER and Sentry Insurance, a mutual company, Defendants-Co-Appellants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 00–1947. Submitted on briefs June 5, 2001.—Decided July 24, 2001.*

2001 WI App 173

(Also reported in 633 N.W.2d 707.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael L. Bertling* of *McLario, Helm & Bertling, S.C.*, Menomonee Falls.

On behalf of the defendants-co-appellants, the cause was submitted on the brief of *James M. Fredericks* and *Patrick S. Nolan* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the defendant-respondent, West American Insurance Company, the cause was submitted on the briefs of *Philip C. Reid* of *Cook & Franke S.C.*, Milwaukee.

On behalf of the defendant-respondent, Universal Metrics, Inc., the cause was submitted on the brief of *Mark J. Mingo* and *Karen W. Moore* of *Mingo & Yankala, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, J.J.

¶ 1. FINE, J. Ricky D. Stephenson, individually and as personal representative of the estate of his wife Kathy M. Stephenson, and Sentry Insurance and its insured John H. Kreuser appeal from a judgment that dismissed all claims against Universal Metrics, Inc.,

and its insurance carrier West American Insurance Company. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2. As we noted in an earlier decision, *Stephenson v. Universal Metrics, Inc.*, 2001 WI App 128, ¶¶ 1–4, 246 Wis. 2d 450, 630 N.W.2d 767, Kathy Stephenson died because while driving her car she was hit by a drunk driver. The drunk driver, Michael T. Devine, who also died as a result of the crash, was an employee of Universal Metrics. He got drunk, very drunk, at a pre-Christmas party sponsored by Universal Metrics at the Silver Spring Country Club. Indeed, after the accident he had a blood-alcohol level of .338, more than three times the highest lawful blood-alcohol concentration for drivers of less than .10. WIS. STAT. §§ 340.01(46m) and 346.63. Stephenson claimed that Kreuser volunteered to drive Devine home but did not do so. Although the trial court ruled that Wisconsin's liquor-provider immunity statute, WIS. STAT. § 125.035, precluded claims against Universal Metrics and West American Insurance, the trial court held that Kreuser was not immune for the alleged breach of the duty he had assumed voluntarily, namely to drive Devine home. *Stephenson*, 2001 WI App 128 at ¶ 5. We affirmed. We did not, however, address other claims asserted against Universal Metrics and West American Insurance. Stephenson claims that Universal Metrics and its insurer West American are liable for both Kreuser's alleged breach of the duty he assumed to drive Devine home, and for damages caused by Devine's drunk driving. We turn to these issues now.

¶ 3. The issues on this appeal were decided by the trial court on summary judgment. Summary judgment is used to determine whether there are any disputed

facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. WIS. STAT. RULE 802.08(2); *U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Of course, "summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus v. American Mut. Ins. Co.*, 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). Moreover, we must look at the facts in a light most favorable to the party opposing summary judgment. *Lambrecht v. Kaczmarczyk*, 2001 WI 25, ¶¶ 12, 23, 241 Wis. 2d 804, 812, 815, 623 N.W.2d 751, 758–759. Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

¶ 4. The trial court held that WIS. STAT. § 125.035 barred claims against Universal Metrics and West American Insurance in connection with Kathy Stephenson's death at Devine's hand. That section provides, as material here:

> **Civil liability exemption: furnishing alcohol beverages. (1)** In this section, "person" has the meaning given in s. 990.01(26).
>
> **(2)** A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.

WISCONSIN STAT. § 990.01(26) defines "person" to "include[] all partnerships, associations and bodies politic or corporate."

¶ 5. WISCONSIN STAT. § 125.035(2) is a broad grant of immunity and not only prevents the imposition of liability on someone who gives a person alcohol, but also immunizes from liability those who: 1) encourage or help a person to drink, or conspire to do so; and 2) knowing that that person would drive, do nothing to either prevent that person from consuming alcohol or prevent that person from driving while drunk. *Greene v. Farnsworth*, 188 Wis. 2d 365, 368–369, 370–372, 525 N.W.2d 107, 108–109, 109–110 (Ct. App. 1994).

¶ 6. In *Greene*, a young child was severely injured when struck by a car driven by Michael J. Riekkoff. Riekkoff was drunk at the time, and the complaint alleged that William L. Farnsworth and Wayne A. Farnsworth "encouraged, advised and assisted Riekkoff to consume alcoholic beverages over the nine-hour period" they went from tavern to tavern. *Id.*, 188 Wis. 2d at 369, 525 N.W.2d at 108. *Greene* noted that no matter how phrased, the plaintiffs' theories of liability arose "out of the Farnsworths' act[s] of providing Riekkoff with alcoholic beverages" and that the statute "specifically grants immunity 'from civil liability *arising out of* the act of procuring alcohol . . . or giving away alcohol beverages. . . .' " *Id.*, 188 Wis. 2d at 372, 525 N.W.2d at 110 (emphasis by *Greene*). Thus, the under-lying theory of liability is irrelevant as long as the liability sought to be imposed arises out of the act of providing alcoholic beverages. *Greene* noted that there was no way to "distinguish between the underlying behavior and the conspiracy and aiding and abetting causes of action" alleged by the Greenes that was consistent with the legislature's intent to immunize "[t]averns, businesses, social hosts and drinking com-panions" from lawsuits "for serving alcohol based on the

theory that they were part of a conspiracy to encourage intoxication and drunk driving." *Ibid. Greene* upheld the trial court's dismissal of the Farnsworths from the action. *Id.*, 188 Wis. 2d at 368–370, 525 N.W.2d at 108–109.

1. *Liability of Universal Metrics and West American Insurance for Kreuser's alleged breach of an assumed duty to drive Devine home.*[1]

¶ 7. In our May 15, 2001, decision in *Stephenson* we held that Wis. Stat. § 125.035(2) did not provide Kreuser with immunity from liability for his voluntary undertaking to drive Devine home. There are two issues here in connection with that ruling. First, whether the West American Insurance policy covering Universal Metrics provides liability coverage if Kreuser is found to be liable for a breach of the voluntary undertaking. This requires us to apply West American's policy and presents an issue of law that we, like our main task on an appeal from a summary judgment determination by the trial court, also decide *de novo. See Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 644, 579 N.W.2d 65, 66 (Ct. App. 1998). Second, whether Universal Metrics is liable for

---

[1] John H. Kreuser and his insurance carrier, Sentry Insurance, only discuss in their appellate briefs the liability of West American Insurance for Kreuser's undertaking to drive Michael T. Devine home, and not the liability of Universal Metrics. This is pointed out by the brief submitted to us by West American, and is not controverted in the Kreuser/Sentry response brief. Stephenson, however, argues that Universal Metrics is liable as Kreuser's employer under *respondeat superior.* Thus, we consider the liability of both Universal Metrics and West American in connection with Kreuser's undertaking to drive Devine home.

Kreuser's alleged breach of the voluntary undertaking. As we will see, these two issues are interrelated.

A. *Liability of West American Insurance under its policy for the actions of Kreuser.*

¶ 8. The West American policy issued to Universal Metrics promises to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." An "insured" is defined by the policy as including Universal Metrics's " 'employees'other than either your 'executive officers,' (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." West American Insurance does not contend on appeal that Kreuser fits within any of the nested exceptions to the policy's definition of which employees are insureds under the policy. *See Reiman Assocs., Inc. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (matters not argued are waived). Thus, we must determine if there are genuine issues of material fact regarding whether Kreuser was acting either within the "scope of his employment" with Universal Metrics or while he was "performing duties related to the conduct" of Universal Metrics's business when he undertook to drive Devine home. If so, summary judgment was not appropriate.

¶ 9. No one disputes that the party at the Silver Spring Country Club was a Universal Metrics affair, and that Universal Metrics had the exclusive use of a room at the club. Universal Metrics provided the food, and two drink tickets, which could be used for any type

of drink. Employees checked in when they arrived, and received name tags in addition to their drink tickets. The president of Universal Metrics gave a speech to the employees after dinner, and there was a company awards ceremony. Additionally, the company president circulated among the employees. One of the party's purposes was to foster good will between Universal Metrics and its employees.

¶ 10. Much of the analysis of whether an employee acts within the scope of employment focuses on the employee's intent at the time. *Olson v. Connerly*, 156 Wis. 2d 488, 497–501, 457 N.W.2d 479, 482–484 (1990) (sex between medical assistant at health-care clinic and physician on medical-school faculty who was assigned to clinic as part of faculty duties was not within the scope of his employment at the clinic). Thus, an employee acts within the scope of his or her employment as long as the employee is, at least, "partially actuated by a purpose to serve the employer." *Id.*, 156 Wis. 2d at 499, 457 N.W.2d at 483. On the other hand, an employee does not act within the scope of his or her employment if the employee does something that "is different in kind from that authorized [by the employer], far beyond the authorized time or space limits [established for the employment], or too little actuated by a purpose to serve the" employer. *Scott v. Min-Aqua Bats Water Ski Club, Inc.*, 79 Wis. 2d 316, 321, 255 N.W.2d 536, 538 (1977) (ski club employee was acting within the scope of his employment when he accidently discharged a shotgun while practicing for a show). Moreover, "[s]erving the employer need not be the sole purpose of the employee's conduct, nor need it be even the primary purpose" for the employee to be acting within the scope of the employment. *Block v. Gomez*,

359

201 Wis. 2d 795, 806, 549 N.W.2d 783, 788 (Ct. App. 1996) (sex by therapist with patient not within scope of therapist's employment so as to make therapist's employer liable under *respondeat superior*).

¶ 11. Kreuser was part of Universal Metrics's management. Thus, although it might be entirely logical to conclude that he agreed to drive Devine home because, as he testified at his deposition, he was just being a "nice guy," that does not end the matter. A reasonable jury could also perceive that Kreuser had at least some business purpose in offering to drive Devine home. Devine was a valued employee. Either his arrest or involvement in an accident because he was driving while drunk would not only cause him personal problems that might decrease his job efficiency, but would also cause problems for Universal Metrics because he got drunk at a company party. This was not the first time that Devine had been in an alcohol-related crash. Moreover, Kreuser knew when he offered to drive Devine home that Devine had been previously convicted of drunk driving. Although, as noted, Kreuser testified at his deposition that Devine did not appear to be drunk when Kreuser agreed to drive him home, a reasonable jury might not believe him. First, Devine's post-accident blood-alcohol level was .338, which a forensic toxicologist with the state crime laboratory testified at the Waukesha County inquest into the double fatality meant that Devine had between thirteen and seventeen drinks that evening. Second, the bartender at the Universal Metrics party that night testified at the inquest that when Kreuser agreed to drive Devine home, Devine was so drunk that she could not understand what he was saying. In light of all this, a reasonable jury could conclude that Kreuser was, in the words of *Olson* quoted above, at least "partially actu-

ated by a purpose to serve the employer" in offering to drive Devine home. *Olson*, 156 Wis. 2d at 499, 457 N.W.2d at 483.

¶ 12. Applying to this case the first of the two additional factors discussed in *Scott*, whether what the employee did was "different in kind from that authorized by the employer," *Scott*, 79 Wis. 2d at 321, 255 N.W.2d 538, a reasonable jury could conclude that driving Devine home was not something that Universal Metrics would have forbidden had Kreuser asked first. Indeed, the jury could conclude that Kreuser was acting consistent with company policy. First, as we have seen, Kreuser was part of management. Second, the president of Universal Metrics testified in his deposition that if he had been aware that someone at the party was drunk, "an offer would have been made" to drive that person home. Third, Kreuser had driven Devine home from a company party once before because Devine had too much to drink.

¶ 13. Turning to the second of the two additional factors discussed by *Scott*, whether what the employee did was "beyond the authorized time or space limits" for the employment, *ibid.*, a reasonable jury could conclude that Kreuser's offer to drive Devine was made on what was essentially company "time" and within company "space," albeit after normal business hours and away from the company's physical plant.

¶ 14. Finally, although we discussed earlier the third *Scott* factor, the employee's intent, *ibid.*, we are mindful that a question of intent can rarely be resolved by the court as a matter of law. *Lecus*, 81 Wis. 2d at 190, 260 N.W.2d at 244. Additionally, whether an employee acts within the scope of his or her employment is generally a fact issue to be decided by a jury. *Desotelle v.*

*Continental Cas. Co.*, 136 Wis. 2d 13, 26–27, 400 N.W.2d 524, 529 (Ct. App. 1986). Accordingly, we believe that it is a jury question whether Kreuser was acting within the scope of his employment at Universal Metrics when he agreed to drive Devine home.

¶ 15. As noted earlier, the West American policy also provides liability coverage for acts of Universal Metrics's employees committed while the employees "are performing duties related to the conduct of [Universal Metrics's] business." Kreuser was at the Universal Metrics party because he was part of Universal Metrics's management. And, as we have seen, the party had business as well as social purposes; the business of an enterprise extends beyond the bare money-making activities of taking, processing, and selling goods or services. We believe, as with the scope-of-employment issue discussed above, and for the reasons already discussed, that it is also a jury question whether Kreuser was doing something related to the business of Universal Metrics when he offered to drive Devine home.

B. *Liability of Universal Metrics for the actions of Kreuser.*

¶ 16. An employer is vicariously liable for torts that an employee commits while the employee is acting within the scope of his or her employment. *Scott*, 79 Wis. 2d at 320, 255 N.W.2d at 538. For the reasons we have already discussed, it is for a jury to decide whether Kreuser was acting within the scope of his employment at Universal Metrics when he agreed to drive Devine home, but did not.

¶ 17. We reverse the trial court's grant of summary judgment dismissing the claims of Stephenson, Kreuser, and Sentry against Universal Metrics and West American Insurance in connection with Kreuser's undertaking to drive Devine home.

2. *Liability of Universal Metrics for the actions of Devine under the doctrine of respondeat superior.*

■

¶ 18. Stephenson argues that Universal Metrics is responsible for Devine's negligence in drinking, driving, and crashing into Kathy Stephenson's car because, Stephenson contends, Devine was acting within the scope of his employment at each of those times. He cites authorities from other jurisdictions that impose liability for accidents caused by drunken employees on their way home from company-sponsored events where liquor was served. This argument, however, ignores Wis. STAT. § 125.035(2) and its broad grant of immunity. For the reasons already discussed above, Universal Metrics is immune from civil liability for doing anything that either encouraged Devine to drink or failed to stop him from either drinking or driving while drunk. *Greene*, 188 Wis. 2d at 368–369, 370–372, 525 N.W.2d at 108–109, 109–110. Moreover, an employer is not liable under the doctrine of *respondeat superior* for injuries caused by an employee's negligent driving either to and from work or to and from some company-sponsored event, even when—as it was not here—attendance is required *unless* the employer exercises control over the method or route of travel. *DeRuyter v. Wisconsin Elec. Power Co.*, 200 Wis. 2d 349, 354–362, 546 N.W.2d 534, 537–540 (Ct. App. 1996), *aff'd by an equally divided court,* 211 Wis. 2d 169, 565 N.W.2d 118 (1997).

¶ 19. We affirm the trial court's dismissal of Stephenson's claims, based on *respondeat superior*, seeking to hold Universal Metrics liable for Devine's drunk driving.

3. *Liability of Universal Metrics for its failure to prevent Devine from driving while drunk.*

¶ 20. Stephenson asserts various theories under which he contends that Universal Metrics had a duty to ensure that Devine would not hurt others, and argues that these trump Wis. Stat. § 125.035(2). We disagree.

¶ 21. First, he proffers Restatement (Second) of Torts § 317 (1964), which recognizes that an employer has a duty to exercise "reasonable care so to control" the employee while the employee is "acting outside the scope of his employment as to prevent him from . . . conducting himself as to create an unreasonable risk of bodily harm" to others if the employee is on the employer's premises.[2] But, of course, Devine did not

---

[2] Restatement (Second) of Torts § 317 (1964), provides:

Duty of Master to Control Conduct of Servant.

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

cause harm to anyone at the party, and it was only after he left the party that he killed Kathy Stephenson by driving while drunk. Thus, § 317 of the Restatement is not applicable.

¶ 22. Second, Stephenson also cites out-of-state cases that impose liability for alcohol-related accidents caused by employees who drank while on company premises. But, as we have seen, WIS. STAT. § 125.035(2) grants immunity from liability predicated on letting someone else drive while drunk. *Greene*, 188 Wis. 2d at 368–369, 370–372, 525 N.W.2d at 108–109, 109–110. As *Green* tells us, "[i]n abolishing liability for those who supply alcohol to adults, the legislature clearly intended to completely immunize such persons from all civil liability, regardless of the number of people involved or the particular label used by artfully drafted pleadings." *Id.*, 188 Wis. 2d at 372–373, 525 N.W.2d at 110. We must accept the law as it is. *See id.*, 188 Wis. 2d at 373, 525 N.W.2d at 110.

¶ 23. We affirm the trial court's dismissal of Stephenson's claims, based on all the other theories seeking to hold Universal Metrics liable for Devine's drunk driving.[3]

---

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

[3] In an undeveloped and amorphous argument, Stephenson also contends that West American Insurance provides coverage for Devine's drunk driving. As we have seen, however, coverage for employees is "only for acts within the scope of their employment by [Universal Metrics] or while performing duties related to the conduct of [Universal Metrics's] business." Moreover, the

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

policy excludes liability predicated on the "use ... of any ... auto ... operated by ... any insured." Stephenson does not explain, beyond mere conclusory arguments, how or why Devine either falls within the policy's coverage or is not excluded by the exclusion; indeed, he does not even discuss the policy's language. We thus do not further consider Stephenson's contentions on this point. *See Barakat v. Department of Health & Social Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398–399 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments); *see also Libertarian Party of Wisconsin v. State*, 199 Wis. 2d 790, 801, 546 N.W.2d 424, 430 (1996) (only issues that have merit need be discussed).