COURT OF APPEALS
DECISION
DATED AND FILED

June 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP402**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV6138

IN COURT OF APPEALS
DISTRICT I

DIANE KUNDINGER,

PLAINTIFF-APPELLANT,

V.

SAMUEL P. STAIR,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Reversed and cause remanded for further proceedings*.

Before Brash, C.J., Dugan and White, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM. Diane Kundinger appeals from the circuit court order granting judgment in favor of Samuel Stair in her civil action alleging malicious prosecution.  Kundinger argues that the circuit court erred when it granted summary judgment because genuine issues of material fact exist.  We agree that there are material facts related to Kundinger's claim that must be determined and that Stair is not entitled to judgment as a matter of law. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶2    In October 2020, Kundinger filed a civil action against Stair alleging one count of the intentional tort of malicious prosecution.  We recite from the allegations in the complaint.  Stair employed Kundinger from February 2013 through October 2015 at his various business operations, including S2 Real Estate and S2 Technologies (collectively, S2).  Kundinger's duties included office management, operations, day-to-day financial transactions, and purchasing.  It is undisputed that Kundinger redeemed certain Menards rebates for personal purchases in addition to her purchasing at Menards for S2.

¶3    The complaint alleged that after Kundinger left S2's employment, she noticed that her final paycheck was "missing significant compensation." When Kundinger could not get a resolution with Stair, she sought assistance from the Wisconsin Department of Workforce Development (DWD) to recover her missing wages.  A decision in Kundinger's favor was issued by DWD in October 2016.

¶4    The complaint further alleged that in December 2015, Stair contacted the Wauwatosa Police Department and alleged that he had become aware of potential embezzlement in his companies, and suspected Kundinger.

Stair alleged that Kundinger committed embezzlement by using promotional rebates from his businesses' purchases at Menards for her personal use without his authorization, alleging that he was unaware that the rebate program existed.

¶5 In October 2017, the Milwaukee County District Attorney's Office (DA) filed a criminal complaint against Kundinger. In March 2018, Kundinger was arrested and released on bond. On November 13, 2018, the DA moved to dismiss without prejudice all charges against Kundinger, and the case was dismissed on the same date. The record does not reflect why the case was dismissed.

¶6 Stair moved for summary judgment on Kundinger's complaint in September 2021, arguing that her claim failed as a matter of law because the criminal complaint was not initiated with malice by Stair and was never adjudicated on the merits. In support of his motion, Stair submitted an affidavit from a Wauwatosa Police Department detective who investigated Stair's complaint from January through June 2016, after Stair's police report in December 2015. The detective determined that Kundinger, without Stair's authorization, redeemed Menards rebates earned by S2 for her personal use. As part of his investigation, the detective (1) performed a criminal background check on Kundinger; (2) discussed the Menards rebate program with an employee; (3) obtained and reviewed surveillance videos of Kundinger's purchases at Menards; and (4) met with Stair on two occasions to review the surveillance

videos and to clarify whether there were any valid business reasons for Kundinger's purchases.[1]

¶7 In her opposition to the summary judgment motion, Kundinger submitted copies of text messages she purported were from Stair in which he represented to her that he had dispositive control over whether she would continue to be prosecuted. The first message stated:

> …you were a good office manager but no one will hire you if you have employee theft or embezzlement on your record even if u don't get jail time.. you cannot be this stupid. Call me.. work out a payment plan.. heck put it on another cc or I have to email back the office to press charges. [sic]

A second message dated May 9, 2016, stated, "Okay you win I called Department of Workforce Development say it was your error cancel the whole thing and I'll drop all the felony charges." [sic]

¶8 The circuit court held a hearing on the summary judgment motion on January 27, 2022, with a written decision filed on February 2, 2022. The court concluded that the Wauwatosa Police Department detective conducted an independent investigation that broke the chain of causation between the initial police report by Stair and the ultimate commencement of the criminal proceeding against Kundinger. The court granted judgment in Stair's favor.

¶9 Kundinger appeals.

---

[1] While the detective's report and affidavit were submitted to the circuit court, the record before us does not contain the criminal complaint.

4

## DISCUSSION

¶10 Kundinger argues that the circuit court erred when it granted summary judgment in Stair's favor. Whether the circuit court properly granted summary judgment to Stair is a question of law that we review independently, applying the same two-step methodology used by the circuit court. *Tatera v. FMC Corp.*, 2010 WI 90, ¶15, 328 Wis. 2d 320, 786 N.W.2d 810. First, the court "examine[s] the pleadings to determine whether a claim for relief has been stated." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Second, "[i]f a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist." *Id.*

¶11 If there are "no genuine issues as to any material fact" brought forth in the pleadings and supporting papers, and the moving party is entitled to judgment as a matter of law, then the circuit court shall render summary judgment. WIS. STAT. § 802.08(2) (2021-22).[2] However, "if there are any material facts in dispute or competing reasonable inferences the party resisting the motion is entitled to a trial." *Lecus v. American Mut. Ins. Co. of Bos.*, 81 Wis. 2d 183, 190, 260 N.W.2d 241 (1977). "All reasonable inferences drawn from the underlying facts contained in these [supporting] documents that are in the record must be viewed in the light most favorable to the non-moving party." *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶30, 283 Wis. 2d 384, 700 N.W.2d 27.

¶12 Kundinger asserts that her complaint sufficiently alleged the six elements of a malicious prosecution civil action. Stair contends that Kundinger's

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

allegations could not support the second element of a malicious prosecution claim; therefore, her claim fails as matter of law. Kundinger argues that Stair misinterprets that element. We begin with the six elements required to be shown to succeed on a claim of the intentional tort of malicious prosecution:

> 1. There must have been a prior institution or continuation of judicial proceedings against the plaintiff;
>
> 2. Such former proceedings must have been by, or at the instance of the defendant;
>
> 3. The former proceedings must have terminated in favor of the plaintiff;
>
> 4. There must have been malice in instituting the former proceedings;
>
> 5. There must have been want of probable cause for the institution of the former proceedings; and
>
> 6. There must have been injury or damage resulting to the plaintiff from the former proceedings.

*Monroe v. Chase*, 2021 WI 66, ¶11, 397 Wis. 2d 805, 961 N.W.2d 50 (quoting *Elmer v. Chicago & N.W. Ry. Co.*, 257 Wis. 228, 231, 43 N.W.2d 244 (1950)).

¶13　The first step in the summary judgment analysis is whether Kundinger sufficiently alleged facts to support a claim upon which relief may be granted. "All six elements must be present in order to state a valid claim for malicious prosecution, and the absence of any one element is fatal to the claim." *Strid v. Converse*, 111 Wis. 2d 418, 424, 331 N.W.2d 350 (1983). There is no dispute that the first element is satisfied by the criminal complaint against Kundinger for the charge of embezzlement of Stair's companies. Stair does not dispute the circuit court's analysis that elements four, five, and six were sufficiently pled to state a claim, but argues that material facts were at issue

6

precluding summary judgment. Stair's primary argument is that element two fails as a matter of law; however, he asks us to also consider that element three fails.[3]

¶14 Element two requires that the "former proceedings must have been by, or at the instance of the defendant." *Monroe*, 397 Wis. 2d 805, ¶11. In other words, Stair had to have initiated the criminal case against Kundinger to satisfy element two. Malicious prosecution claims are limited "to those instances in which the defendant, as a private citizen, has taken affirmative, decisive steps to subject another person to the rigors of a lawsuit, without knowing that his claim is well grounded[.]" *Pollock v. Vilter Mfg. Corp.*, 23 Wis. 2d 29, 36, 126 N.W.2d 602 (1964). The defendant must also be "motivated, not by a desire to vindicate his legitimate legal interests or the interests of the community, but rather by a desire to injure the reputation, or economic interests of the plaintiff." *Id.* at 36-37.

¶15 Both parties rely on *Pollock* to support their reasoning with regard to element two. Therefore, we begin by considering the facts and law of that case, which arises out of an independent auditor of Vilter Manufacturing Corporation raising concerns about "certain irregularities" in Vilter's accounts. *Id.* at 31. The auditor raised concerns about a business entity, which acted between Vilter and one of its freight handlers, and Pollock, a vice president at Vilter. *Id.* It was revealed that Pollock operated the business entity—unbeknownst to Vilter. *Id.* at 32. After a detailed audit that showed questionable transactions in upwards of $250,000, Vilter's counsel raised a concern that Pollock was violating the National Stolen Property Act, a federal crime. *Id.* at 34. Vilter contacted the U.S.

---

[3] Kundinger argues that Stair has not cross-appealed the judgment and cannot challenge the court's decision on appeal with regard to element three. We address this concern below.

Attorney's office, and an FBI agent then "conducted an independent investigation of Pollock's activities in his dual role as a Vilter vice-president" and as his own business entity. *Id.* at 34-35. The FBI agent concluded there was probable cause to believe that Pollock violated federal law, which led to Pollock's arrest, and eventually, an indictment by a federal grand jury. *Id.* However, the jury returned a not guilty verdict in the trial of the charges against Pollock. *Id.*

¶16 Shortly after his acquittal, Pollock filed a malicious prosecution action against Vilter. *Id.* at 35. After Vilter was granted summary judgment on the claim, Pollock appealed. *Id.* Our supreme court affirmed the dismissal of the action because the FBI agent conducted an independent investigation and "did not base his decision to sign the complaint solely upon the information provided by Vilter." *Id.* at 40, 44. It concluded that "[u]nder these circumstances Vilter's conduct did not, as a matter of law, initiate the criminal prosecution of Pollock." *Id.* at 40.

¶17 The instant case centers on the same element that was in dispute in *Pollock*. Stair argues that the Wauwatosa detective's investigation was conducted independently after Stair filed his police report, and therefore, Stair could not have initiated the criminal prosecution of Kundinger. Kundinger counters this position by arguing that the criminal prosecution was predicated and could only continue upon Stair's accusation that Kundinger was not authorized to use the Menards rebates.

¶18 On this issue, we conclude that Kundinger's position is correct under the "[u]nder these circumstances" analysis in *Pollock*. *Id.* at 40. We conclude that Stair's actions initiated and continued the criminal prosecution of Kundinger. Although Stair points to the lengthy investigation of Kundinger by Wauwatosa

police and the detective's contact with personnel at Menards, that investigation remained dependent on Stair's accusation that Kundinger was using the Menards rebates without his knowledge or authorization. Without Stair's accusation, the detective's investigation showed only that Kundinger used the rebates—an action that is not a crime on its own. Kundinger asserts she was authorized by Stair to use the rebates. A crime only arises if she used S2's Menards rebates without authorization or consent. Moreover, the detective's investigation does not present an independent corroboration of Stair's claim. In contrast, in ***Pollock***, the FBI agent investigated a violation of federal law that began with Vilter's report, but the violation was not entirely predicated on Vilter's accusation.

¶19    Stair argues that the police and the DA's office found probable cause and pursued charges against Kundinger; therefore, the chain of causation from his report to Kundinger's prosecution was broken. We reject this argument. Again, turning to ***Pollock***,

> In the state system, an officer may simply allege his conclusion of probable cause based upon information and belief. Therefore, if an officer accepted groundless allegations made by a private party and signed a complaint supporting the warrant alleging information and belief as the basis of his conclusion, and if the magistrate, accepting the sufficiency of the allegations, issued a warrant, the plaintiff would be damaged as a result of defendant's initial false or inaccurate statements. That an officer signed the original complaint does not alter defendant's liability under these circumstances.

*Id.* at 40. As always, during summary judgment, we view Kundinger's allegations in the light most favorable to her, as the non-moving party. *See **Johnson***, 283 Wis. 2d 384, ¶30. Kundinger alleged that Stair falsely told the police that she was unauthorized to use the Menards rebates; therefore, the detective's and the DA's findings of probable cause could be based on "groundless allegations made by a

private party" and Stair's liability could support Kundinger's damages caused by Stair's "false or inaccurate statements." *See Pollock*, 23 Wis. 2d at 40.

¶20     Further, our supreme court has explained that in a malicious prosecution claim, probable cause is defined as "that quantum of evidence which would lead a reasonable layman in the same circumstances to honestly suspect that another person had committed a crime." *Id.* at 41-42. The record of Stair's communication with Kundinger, submitted as two texts, shows that Stair believed or represented to Kundinger that he had the power to stop the criminal prosecution. This raises an issue of material fact about whether Stair could claim an honest suspicion about Kundinger's conduct.

¶21     Ultimately, genuine issues of material fact with regard to element two preclude summary judgment. Kundinger claims Stair consented to her use of the rebates and accuses him of making false statements to the Wauwatosa police that he did not authorize her use. Stair claims he did not consent or authorize her use. The "court does not resolve issues of fact on summary judgment, but rather decides whether genuine issues of material fact exist" to be tried. *Voysey v. Labisky*, 10 Wis. 2d 274, 280, 103 N.W.2d 9 (1960) ("Summary judgment procedure is not to be a trial on affidavits and adverse examinations.").

¶22     Turning to element three, the substance of Stair's argument on appeal is that because the circuit court concluded the record was "devoid" of why the case against Kundinger was dismissed, she could not successfully support element three of her allegations. Kundinger asserts that Stair did not cross-appeal the circuit court's decision, and thus, improperly asks the court to review the circuit court's findings and conclusions related to element three. As the respondent to this appeal, Stair "may raise an issue in his briefs without filing a

cross-appeal 'when all that is sought is the raising of an error which, if corrected, would sustain the judgment[.]'" ***Auric v. Continental Cas. Co.***, 111 Wis. 2d 507, 516, 331 N.W.2d 325 (1983) (quoting ***State v. Alles***, 106 Wis. 2d 368, 391, 316 N.W.2d 378 (1982)).   Therefore, because Stair asserts that element three also supports judgment in his favor, his argument is allowed because the judgment "will not be overturned where the record reveals that the trial court's decision was right, although for the wrong reason." ***Alles***, 106 Wis. 2d at 391.[4]   Accordingly, we will address the merits of his argument, although we ultimately reject his position.

¶23     First, Stair argues that because of the circuit court's pronouncement that there was a "devoid" record with regard to reasoning behind the dismissal means that Kundinger cannot support her claim on element three.   However, we are not convinced that Stair's position matches the circuit court's meaning.   The circuit court concluded it would be premature to determine whether Kundinger was meritorious in the prior proceeding because there was a lack of information in the record.[5]   Viewing the facts in the light most favorable to Kundinger as the non-moving party during summary judgment, we consider her allegation in the complaint that it took "until November 2018 to prove her innocence to the prosecutor's satisfaction" sufficient to state a claim.   While there are genuine issues of material facts stemming from the limited information in the record,

---

[4] Consistent with this concept, an appellate court "has the power, once an appealable order is within its jurisdiction, to examine all rulings to determine whether they are erroneous and, if corrected, whether they would sustain the judgment or order which was in fact entered." ***State v. Alles***, 106 Wis. 2d 368, 391, 316 N.W.2d 378 (1982).

[5] Moreover, the circuit court decided that element two was dispositive, and it only addressed the remaining disputed issues out of completeness.

nonetheless, her allegation is sufficient to state a claim for element three and those disputed facts preclude summary judgment.

¶24    Second, Stair fails to address ***Monroe***, where our supreme court held that "a withdrawal of a prior proceeding may satisfy the favorable-termination element of a malicious-prosecution action," depending on the facts and circumstances of the case. ***Monroe***, 397 Wis. 2d 805, ¶¶22, 26. The circuit court commented in its decision that all of Stair's legal authority upon which he relied predates the ***Monroe*** decision in 2021. We conclude that whether the State's dismissal, without prejudice, of the charge against Kundinger "constitutes a favorable termination" that "remains a question for a fact-finder." *See **id.***, ¶26.

## CONCLUSION

¶25    For the reasons stated above, we conclude that Stair is not entitled to judgment as a matter of law because the police investigation into Kundinger's use of the rebates relied upon Stair's continued and ongoing assertion that she did not have consent or authorization to use those rebates. Therefore, she has stated facts to support element two of her malicious prosecution claim. Further, while Kundinger sufficiently alleged facts to support element three, there are material facts in dispute over whether the dismissal was in her favor. Ultimately, genuine issues of material fact exist throughout this case, and preclude summary judgment in favor of Stair. Therefore, we reverse the judgment and remand for further proceedings consistent with this decision.

*By the Court.*—Reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.