Sherri KORNTVED and Amanda Howell, a minor, by her Guardian ad Litem, Arthur E. Beck, and her mother, Plaintiffs-Appellants,

v.

ADVANCED HEALTHCARE, S.C., and Midwest Medical Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 2004AP1604. Submitted on briefs May 5, 2005.*
*—Decided July 19, 2005.*

2005 WI App 197

(Also reported in 704 N.W.2d 597.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Arthur E. Beck* and *Katherine L. Williams* of *Beck, Chaet & Bamberger, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Mary K. Wolverton* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J.   Sherri Korntved and Amanda Howell, Korntved's daughter, appeal from the trial court's grant of partial summary judgment in favor of Advanced Healthcare, S.C., and Midwest Medical Insurance Company. Korntved contends that there were material facts in dispute as to whether Advanced Healthcare's employee, Lu Ann Howell, was acting within the scope of her employment when she accessed and released Amanda Howell's and Sherri Korntved's medical records and allegedly violated WIS. STAT. §§ 146.82[1] and 895.50 (2003–04),[2] and as such, summary judgment on those claims was improperly granted. Because there was no genuine issue of mate-

---

[1] WISCONSIN STAT. § 146.82(1) (2003–04) provides, in part:

CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient.

[2] WISCONSIN STAT. § 895.50 (2003–04) provides, in part:  "**Right of privacy. (1)** The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief . . . ."

rial fact as to whether Lu Ann was acting within the scope of her employment at the time Advanced Healthcare moved for summary judgment, we affirm.

## I. BACKGROUND.

¶ 2. After discovering that Lu Ann Howell, the wife of Amanda Howell's father, Jeremy Howell, who was employed as a lab technician by Advanced Healthcare, had allegedly accessed Korntved's and Amanda's medical records, and disclosed information contained in those records to Jeremy, Korntved filed a complaint against Advanced Healthcare listing several claims: (1) breach of confidentiality of patient health care records; (2) breach of the right of privacy; (3) breach of physician-patient privilege; (4) breach of contract; (5) negligent supervision and/or hiring and/or training; and (6) failure to maintain the standard of care under HIPAA.[3]

¶ 3. Advanced Healthcare subsequently moved for partial summary judgment asserting, *inter alia,* that it cannot be held liable for Lu Ann's actions as they were committed outside the scope of her employment.[4] Though Advanced Healthcare conceded that Lu Ann did access the medical records, it argued that she was

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, and is mentioned only as a part of the factual background of the complaint and is otherwise irrelevant to this appeal, as Korntved subsequently conceded that there was no HIPAA violation.

[4] Since Korntved is appealing only the grant of summary judgment with regard to her claims of breach of patient confidentiality and breach of the right to privacy, we will limit the background and discussion to the arguments related thereto.

not acting within the scope of her employment with Advanced Healthcare when she did so. It insisted that, pursuant to the recognized standard for determining whether an employee's acts were within the scope of employment, Lu Ann's actions could not be considered within the scope of her employment. Advanced Healthcare has an express policy, which it attached to its motion, forbidding the access of patients' medical records for non-work related purposes. Although Advanced Healthcare recognized that the employee's intent must be considered when determining whether her actions were within the scope of employment, it insisted that Lu Ann accessed the records for her own gain, and although "serving the employer" need not be the sole purpose for her conduct to be considered within the scope of employment, her actions also did not benefit Advanced Healthcare in any way: "On the contrary, Advanced Healthcare was damaged by [her] indiscretions. As Advanced Healthcare did not benefit from [her] actions nor did [it] authorize such actions, [it] should not be held liable for her willful, intentional and criminal actions under Wis. Stats. § 146.84(2)."

¶ 4. Korntved essentially argued that in determining whether Lu Ann was acting within the scope of her employment, and thus whether Advanced Healthcare could be held liable for her actions, a factual issue remained as to Lu Ann's intent when she accessed the records:

> Ms. Howell had access to patient records, and was required to access records, as a part of her employment at Advanced Healthcare. The mere fact that Ms. Howell accessed the particular records is not as a matter of law beyond the scope of employment, because if it was, it would have been clear from the facts that Ms. Howell was acting far beyond her authorized limits. In fact,

Advanced Healthcare addressed their concern regarding this very issue in its "Employee Newsletter on Confidentiality[.]" In the newsletter, Advanced Healthcare acknowledges that "it is not uncommon for employees . . . to become curious about the well-being of a patient who is a co-worker, family member, friend or acquaintance." Advanced Healthcare's concern suggests that Ms. Howell's conduct was not far outside the type of conduct employees generally engage in. While the conduct is prohibited, Advanced Healthcare acknowledges that improper access occurs, which suggests that it is not outside the scope of employment as a matter of law.

Korntved argued that the mere fact that an act was not authorized or that it was prohibited does not take it out of the scope of employment—"even though Advanced Healthcare prohibited looking at patient medical records for personal reasons, Ms. Howell's actions are not outside the scope of employment as a matter of law. In fact, [she] was doing something that was indeed part of her employment and something which she had to do as part of her job." Accordingly, Korntved insisted that determining whether Lu Ann was acting within the scope of her employment requires a determination of intent, which generally presents a question of fact. Korntved reasons that here, the mere possibility that Lu Ann may have had some personal interest in the records does not, as a matter of law, take the action outside the scope of employment. Specifically, Korntved argued, in response to interrogatories, that Advanced Healthcare conceded it is possible that Jeremy Howell could have requested the record,[5] and as such, Lu Ann's intent is a question of fact to be determined at trial.

[5] Korntved cited to interrogatory responses that were allegedly part of the trial court record, but were not attached to the summary judgment motion, and do not appear to have been included in the appellate record (other than as a photocopied

¶ 5. In granting Advanced Healthcare's motion for partial summary judgment, the trial court held, in relevant part:

[T]he crux of those . . . charges[—patient confidentiality and privacy—] is that this woman was acting in the . . . scope of her employment.

Absent her acting within the scope of her employment, we don't have a basis upon which to go after the employer. We have, perhaps, a basis upon which to go after the actor, but not the employer.

. . . .

I think Olson is instructive, and reading from Olson, it states, in its entirety, there's no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose.

Rather, an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer, or if it is motivated entirely by the employee's own purposes.

The Olson Court also said, conduct of a servant is not within the scope of employment if it is different in kind from that authorized, or beyond the authorized time or space limits, or too little actuated by the purpose to serve the master.

And here we — For the purposes of this hearing, I am accepting that this employee did transfer this information, which was held confidentially by the employer, and transferred it to a person who did not have a right to see that information, for the purposes of this proceeding only.

exhibit attached to Korntved's motion for reconsideration on the trial court level). Other interrogatory responses have been included in different portions of the appellate record.

. . . .

As I understand the plaintiff's argument, they want the fact that she has the right to access information to be the connecting issue that makes it within the scope.

Looking at the facts in this case, there's no indication that Luann Howell was intending to benefit her employer in any way by accessing this information or by disclosing the records, if, in fact, that's what she did.

She signed an express policy that forbid her to take these actions. She was, in numerous documents, advised of — that this was not within the scope of her employment and this was not an acceptable activity that she could engage in for any purpose.

And the fact that she did so, presuming that she did so, only hurts her employer.

There's absolutely no benefit that can come to — It can end up that they're in court like they are today, and the obvious negatives are before us.

I see no way that the Court can, based on these facts, find that she's acting within the scope of her employment, and the Court does so find.

(Underlining in original.) Korntved filed a motion for reconsideration, which was subsequently denied. The other counts were resolved in various ways, and the sixth count of the complaint was eventually tried to a jury. Korntved now appeals the trial court's grant of summary judgment with respect to the first two counts of the complaint.

## II. Analysis.

¶ 6.   On appeal, Korntved argues that the trial court acted "prematurely and precipitously in granting

Advanced's motion for summary judgment," ignoring discovery responses that "clearly stated that Advanced did not know whether or not Lu Ann Howell accessed Amanda Howell's records at the request of Amanda's father, Jeremy Howell, but that access [to] Amanda Howell's records could have been authorized by Jeremy Howell." Korntved insists that "[t]hese responses, taken together with Korntved's testimony, clearly establish that there were material facts in dispute with respect to the issue of whether or not Lu Ann Howell acted within the scope of her employment or believed she was doing so." She contends that "[w]hat was not known at the time the summary judgment motion was heard was whether Lu Ann Howell was authorized to access or thought she was authorized to access or disclose this information by [sic] Jeremy Howell," and thus whether she was acting within the scope of her employment.

¶ 7. Both parties agree that the dispositive issue with regard to these two claims is whether Lu Ann was acting within the scope of her employment, because Advanced Healthcare cannot be held liable otherwise. They disagree, however, on whether this determination constituted a genuine issue of material fact.

¶ 8. In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987); *Wright v. Hasley,* 86 Wis. 2d 572, 579, 273 N.W.2d 319 (1979).

¶ 9. In *Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be applied in evaluating a summary judgment motion:

Under that methodology, the court, trial or appel-

507

late, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense [that] would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.

Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.

*Id.* (citations omitted).

¶ 10. Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" Wis. Stat. § 802.08(2). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) (citation omitted; emphasis in original). Thus, "[a] factual issue is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (citation omitted).

¶ 11. In determining whether an employee was acting within the scope of his or her employment, "[t]he test is whether the servant has stepped aside from the business of his [or her] principal to accomplish an independent purpose of his [or her] own, or whether he [or she] was actuated by an intent to carry out his [or her] employment and to serve his [or her] master." *Linden v. City Car Co.*, 239 Wis. 236, 239, 300 N.W. 925 (1941).

> Much of the analysis of whether an employee acts within the scope of employment focuses on the employee's intent at the time. Thus, an employee acts within the scope of his or her employment as long as the employee is, at least, "partially actuated by a purpose to serve the employer." On the other hand, an employee does not act within the scope of his or her employment if the employee does something that "is different in kind from that authorized [by the employer], far beyond the authorized time or space limits [established for the employment], *or* too little actuated by a purpose to serve the" employer.

*Stephenson v. Universal Metrics, Inc.*, 2001 WI App 173, ¶ 10, 247 Wis. 2d 349, 633 N.W. 2d 707 (citations omitted; emphasis added; alterations in original).

¶ 12. Although we have noted that "whether an employee acts within the scope of his or her employment is *generally* a fact issue to be decided by a jury[,]" and "question[s] of intent can *rarely* be resolved by the court as a matter of law[,]" *id.*, ¶ 14 (emphasis added), "generally" and "rarely" do not mean "always" and "never." When there is no genuine issue of material fact,

509

even if the concern is whether an employee was acting within the scope of her employment, summary judgment may be proper.

■

¶ 13.  Here, there is no genuine issue of material fact. The materials presented and cited in support of and in opposition to the motion for summary judgment reveal no genuine issue of material fact as to whether Lu Ann was acting within the scope of her employment when she accessed the medical records. There is nothing in the record, as of the time of the summary judgment motion, to support an inference that Lu Ann was attempting to benefit or serve her employer when she accessed the medical records. What *was* in the record, however, was Advanced Healthcare's confidentiality policy, a copy of which had been signed by Lu Ann as a condition of her employment, delineating the proper methods for the access and release of medical records, and identifying the only individuals with authority to do so. Specifically, the confidentiality policy provides, in part:

- **Records and related information must be protected and respected, and they should not be accessed, altered, reviewed, shared, or discussed, except as required by your business responsibilities.**

  . . . .

- Only open or look into a file, whether written, electronic, or computer-based, when it is necessary as a part of your business responsibilities. Do not look at information for curiosity, or because someone asks you to do so when it is not within your responsibilities; this applies even for **yourself,** relatives, friends, and neighbors. Instead, use the appropriate Access Guidelines (see below).

510

(Emphasis in original.) Under the title "Access Guidelines," the policy provides, in part:

- **In order to access any patient information, you must follow appropriate authorization procedures.** (Emphasis in original.)

- Patients, including AH employees and their families and friends, who want to review or receive copies of any medical information about them, must make arrangements through the Medical Information Department. *Even if you have access to this information on your computer, you may not copy and provide patient records unless you are a representative of Medical Information Department with these job duties.*

(Footnote omitted; emphasis in original.) As such, it is quite clear that, unless done via the Medical Information Department or in accordance with direct business responsibilities, access to and release of medical records is clearly prohibited—regardless of whose information it is or who wants the information. There is nothing in the record to suggest that Lu Ann was a representative of the Medical Information Department. Moreover, the record shows that, in a response to an interrogatory, Advanced Healthcare indicated that it had no reason to believe that Lu Ann would have had a clinical need to access the records for her work.[6]

¶ 14.   While Korntved makes much of Advanced Healthcare's alleged "concession" that Jeremy could have requested Amanda's record, and the potential

───────────────

[6] The amended complaint also indicates that Korntved and her daughter received treatment at Advanced Healthcare's Menomonee Falls clinic, while Lu Ann worked in Advanced Healthcare's Mayfair office, and that at no time did Korntved or her daughter have any form of nurse or caregiver relationship with Lu Ann.

effect of such a request on the determination of Lu Ann's intent with regard to whether she was acting within the scope of her employment, Korntved fails to appreciate that the ultimate burden of establishing that Lu Ann was acting within the scope of her employment was hers, and she did not present any evidence in connection with the summary judgment motion that could arguably establish or suggest that Lu Ann believed that she was acting within the scope of her employment.[7] Korntved does not point to any affidavits, deposition testimony, or evidence establishing or attempting to establish what Lu Ann believed she was doing when she accessed the records or why she did so. Korntved cannot rely on interrogatory responses allegedly indicating that Advanced Healthcare did not know whether Jeremy requested the records[8] to establish a genuine issue of material fact. The Advanced Healthcare confidentiality policy undisputedly and expressly states that accessing records for non-work purposes is prohibited, and any release of information must be made via the Medical Information Department, and

---

[7] While Korntved cites, in a footnote, that Lu Ann testified at trial, which was held after the summary judgment motion was granted, that she was acting at the request of her husband, and thought that she was complying with a legitimate request, such testimony is irrelevant to determining whether *summary judgment* was properly granted. Citations to trial testimony are not properly before this court on appeal. *See Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 573, 431 N.W.2d 721 (Ct. App. 1988) ("We address [motions for summary judgment] on the record as it existed when they were decided by the trial court, not on a record expanded by the testimony at trial.").

[8] Advanced Healthcare also indicated, in responding to interrogatories, that it had found no written consent for such a request.

without any evidence in the record as to Lu Ann's motivation with regard to her actions, there cannot be a genuine issue of material fact as to whether she was acting within the scope of her employment. That is, there is nothing from which to invoke a reasonable inference that could lead a trier of fact to conclude that Lu Ann was acting within the scope of her employment when she accessed the record. Advanced Healthcare made a *prima facie* case for summary judgment by showing a defense that would defeat its liability for the breach of confidentiality and privacy claims—Lu Ann was not acting within the scope of her employment when she accessed the records—and Korntved failed to provide any affidavits, deposition testimony or evidence suggesting otherwise to establish a genuine issue of material fact. On the face of the record, Lu Ann's actions were " 'too little actuated by a purpose to serve [her]' employer." *See Stephenson*, 247 Wis. 2d 349, ¶ 10 (citation omitted).

¶ 15. While Lu Ann's actions were truly lamentable, and Korntved may have a viable claim against her individually, Advanced Healthcare cannot be held liable for her actions when they fall outside the scope of her employment. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.