COURT OF APPEALS
DECISION
DATED AND FILED

August 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP667**

STATE OF WISCONSIN

Cir. Ct. No. 2015CV1317

IN COURT OF APPEALS
DISTRICT I

JOHN DOE,

PLAINTIFF-APPELLANT,

V.

DAVID P. FOLEY AND GHI INSURANCE GROUP,

DEFENDANTS,

BIG BROTHERS AND BIG SISTERS OF METROPOLITAN MILWAUKEE,

DEFENDANT-RESPONDENT,

FIRST NONPROFIT INSURANCE COMPANY,

INTERVENOR-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1 DONALD, J. John Doe appeals the order granting summary judgment to Big Brothers and Big Sisters of Metropolitan Milwaukee (BBBS) and BBBS's insurance carrier, First Nonprofit Insurance Company (First Nonprofit). Doe initially brought an action against David P. Foley, BBBS, and fictitious insurance companies, alleging that Foley sexually assaulted Doe while Doe was a "little brother" in the BBBS program. Doe brought claims against BBBS for *respondeat superior* and negligent hiring, training, and supervision, and for punitive damages. First Nonprofit intervened and sought a declaration that neither the primary policy nor the umbrella policy issued to BBBS provided coverage for Foley's alleged actions. The circuit court ultimately granted First Nonprofit's motion. BBBS then moved for summary judgment on Doe's claims. The circuit court granted the motion. Because we conclude that there are no issues of material fact, we affirm the circuit court.

## BACKGROUND

¶2 On February 16, 2015, Doe filed a civil complaint against Foley, BBBS, and fictitious insurance companies. As to the claims against Foley, the complaint alleged: (1) battery; (2) intentional infliction of emotional distress; (3) false imprisonment; and (4) negligent infliction of emotional distress. As to the claims against BBBS, the complaint alleged: (1) *respondeat superior* liability; and (2) negligent hiring and supervision. The complaint also set forth direct action claims against BBBS's insurance carrier and punitive damages claims against all of the parties.

¶3 The basis of the complaint was Doe's claim that while a "little brother" with the BBBS program, his "big brother," Foley, sexually assaulted him.

The complaint alleged that when Doe was eleven years old, and continuing for a two-year period, Foley sexually assaulted Doe at multiple locations, provided Doe with excessive gifts, and used his volunteer position with BBBS as a means of having sexual contact with Doe. The complaint alleged that Foley had a criminal history, including convictions for issuing worthless checks, theft, and operating while intoxicated. The complaint states that neither Doe nor his family were aware of Foley's convictions when Foley was assigned as Doe's "big brother." The complaint alleged that BBBS negligently investigated, hired, supervised, and trained Foley, and that Foley used his position with BBBS as a vessel to abuse Doe.

**First Nonprofit's Summary Judgment Motion**

¶4 After Doe filed the complaint, First Nonprofit moved to intervene, seeking a declaratory judgment with respect to any alleged duty to defend and/or indemnify Foley. First Nonprofit moved for summary judgment, arguing that its policies issued to BBBS did not provide coverage for Doe's allegations against Foley because Foley was not acting within the scope of his duties as a volunteer when the alleged abuse occurred. First Nonprofit argued that multiple policy exclusions barred coverage of Doe's claims. First Nonprofit also argued that its policies excluded coverage for any claim of punitive damages.

¶5 At a hearing on First Nonprofit's summary judgment motion, the circuit court granted First Nonprofit's motion as to the false imprisonment claim, but denied the remainder of the motion, stating that the issue of whether Foley was acting within the scope of his volunteer duties was a jury question. The circuit court also found the relevant portions of the relevant policies to be ambiguous.

¶6 First Nonprofit later renewed its motion for summary judgment after conducting a deposition of Foley. The renewed motion argued that, based on Foley's deposition testimony, First Nonprofit's policies did not provide coverage for Doe's alleged allegations because Foley acknowledged that BBBS prohibited sexual abuse of children in the program and that such misconduct would not have been within the scope of a mentor's responsibilities.

¶7 At a hearing on the motion, the circuit court interpreted First Nonprofit's motion as a motion for reconsideration, but stated that First Nonprofit's motion did not meet the criteria for such a motion. Instead, the circuit court invoked its inherent authority to reconsider its previous decision. The circuit court did not consider Foley's deposition testimony, but rather, reevaluated the complaint and granted First Nonprofit's summary judgment motion in its entirety. The circuit court stated "Foley cannot qualify as an insured under this policy because the allegations of abuse within the complaint are not within the scope of his duties as a volunteer Big Brother."

**BBBS's Summary Judgment Motion**

¶8 Following the circuit court's determination that First Nonprofit did not owe coverage for Doe's claims, BBBS moved for summary judgment seeking dismissal of Doe's claims. Specifically, BBBS argued that: (1) it was entitled to summary judgment on Doe's claim for *respondeat superior* because Foley's alleged actions "were not within the scope of his agency and therefore do not allow for vicarious liability"; (2) it was entitled to summary judgment on Doe's negligent hiring, training and supervision claim because "there is no nexus between Foley's criminal history and his unforeseeable actions of assault"; and

(3) that any claim for punitive damages "must be stricken because Doe cannot make the requisite showing to support [his] claim for damages."

¶9 Doe opposed the motion, arguing that Foley "followed BBBS's explicit directives and built a trusting, one-on-one and confidential relationship with … Doe … [and] that the actions [BBBS] deems necessary to develop a mentor/mentee relationship are the same actions pedophiles like Foley use to 'groom' children." Doe also argued that the alleged abuse occurred during the specific hours Doe was under Foley's supervision.

¶10 The circuit court granted BBBS's motion. The circuit court stated that Doe's vicarious liability claim "does not hold water" because

> the sexual act in and of itself … does not further the employer/employee relationship or in this case the volunteerism issue.
>
> So I fully understand the argument that this grooming led up to this, but I also fully understand and believe that … it wouldn't be called "grooming" if nothing happened, but there's nothing wrong with that type of [mentoring] behavior unless you have the end act, and that is either an attempt or a successful sexual assault that happens afterwards.

¶11 As to the negligent hiring, training, and supervision claim, the circuit court stated:

> it is quite clear that there is a need for a causal relationship or a nexus between the negligence of the employer and the harm caused…. I'm having a real hard time at this point finding that nexus or that causal connection between the prior record and the harm[.]

¶12 This appeal follows. Additional facts are included as relevant to the discussion.

**DISCUSSION**

¶13 On appeal, Doe contends that the circuit court erroneously granted summary judgment to BBBS and First Nonprofit because: (1) Foley's alleged abuse occurred during the course of his volunteer sessions with Doe, thereby making BBBS vicariously liable for Foley's alleged actions; (2) BBBS negligently hired, trained, and supervised Foley because BBBS was aware of Foley's criminal history when it accepted him as a volunteer and assigned him to Doe; and (3) First Nonprofit's policies provide coverage for Foley's alleged actions.

**Standard of Review**

¶14 We review a grant of summary judgment *de novo*. *See Tews v. NHI, LLC*, 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. "The summary judgment methodology is well established." *Id.*, ¶41. We first examine the pleadings to determine whether claims for which relief may be granted have been stated. *See id.* If so, we examine the moving party's submissions to determine whether it has made a prima facie case for summary judgment. *See id.* If a prima facie case for summary judgment exists, we examine the opposing party's affidavits and other proof to determine whether summary judgment is appropriate. *Id.*

¶15 Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[1] A factual issue is genuine, for

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

purposes of summary judgment, if a reasonable jury could find in favor of the nonmoving party on that issue. **Central Corp. v. Research Prods. Corp.**, 2004 WI 76, ¶19, 272 Wis. 2d 561, 681 N.W.2d 178. A fact is material when it would influence the outcome of the controversy. **Id.**

¶16 "The purpose of the summary judgment procedure is to avoid trials when there is nothing to try." **Tews**, 330 Wis. 2d 389, ¶42. In reviewing the parties' submissions, we draw all reasonable inferences in the light most favorable to the party against whom summary judgment was granted. See **Pum v. Wisconsin Physicians Serv. Ins. Corp.**, 2007 WI App 10, ¶6, 298 Wis. 2d 497, 727 N.W.2d 346 (2006). Whether an inference is reasonable and whether more than one inference may be drawn are questions of law we decide *de novo*. See **id.**

**Doe's Vicarious Liability Claim Against BBBS**

¶17 Doe argues that "Foley's conflation of his roles as volunteer and abuser rendered those roles indistinguishable; therefore, his acts were committed within the scope of his employment as a volunteer." (Capitalization and bolding omitted.) We disagree.

¶18 Under the doctrine of *respondeat superior*, an employee's actions are imputed to his or her principal when the employee is acting within the scope of his or her employment. See **James Cape & Sons Co. ex rel. Polsky v. Streu Constr. Co.**, 2009 WI App 144, ¶10, 321 Wis. 2d 522, 775 N.W.2d 277. An employee's conduct falls within the scope of his or her employment when the employee is "actuated by an intent to carry out his [or her] employment and to serve his [or her] master." **Korntved v. Advanced Healthcare, S.C.**, 2005 WI App 197, ¶11, 286 Wis. 2d 499, 704 N.W.2d 597 (brackets in original; citation omitted). Conversely, an employee's conduct falls outside the scope of his or her

employment when he or she "step[s] aside from the business of his [or her] principal to accomplish an independent purpose of his [or her] own." *Id.* (first set of brackets added; citation omitted). Stated differently, an employee's conduct falls outside the scope of his or her employment when he or she is "motivated entirely by the employee's own purposes[.]" *Olson v. Connerly*, 156 Wis. 2d 488, 500, 457 N.W.2d 479 (1990). Although "[v]icarious liability under *respondeat superior* typically arises in employer/employee relationships ... [it] is not confined to this type of agency." *Petzel v. Valley Orthopedics Ltd.*, 2009 WI App 106, ¶16, 320 Wis. 2d 621, 770 N.W.2d 787 (italics added; citation omitted).

¶19     "The fact that an agent performs work *gratuitously* does not relieve a principal of vicarious liability when the principal controls or has the right to control the manner and means of the agent's performance of work." *Masri v. LIRC*, 2013 WI App 62, ¶39, 348 Wis. 2d 1, 832 N.W.2d 139 (citation omitted; emphasis in *Masri*); *see also Heims v. Hanke*, 5 Wis. 2d 465, 468, 93 N.W.2d 455 (1958) ("One volunteering service without any agreement for or expectation of reward may be a servant of the one accepting such services."), *overruled on other grounds*, *Butzow v. Wausau Mem'l Hosp.*, 51 Wis. 2d 281, 290-91, 187 N.W.2d 349 (1971).

¶20     We conclude that Foley was not acting within the scope of his employment when he allegedly assaulted Doe. Wisconsin case law has held that sexual conduct falls outside of one's scope of employment. In *Olson*, the supreme court reiterated that "[t]he scope[-]of[-]employment cases of this court have always deemed significant the employee's intent at the time the acts in question were committed." *Id.*, 156 Wis. 2d at 497-98. In *Block v. Gomez*, we relied on *Olson* to conclude that "if the employee fully steps aside from conducting the employer's business to procure a predominantly personal benefit, the conduct falls

outside the scope of employment." *See* ***Block***, 201 Wis. 2d 795, 806, 549 N.W.2d 783 (Ct. App. 1996). In ***Block***, the plaintiff was involved in a sexual relationship with her drug abuse counselor that occurred during her treatment. The plaintiff sought to hold the clinic vicariously liable for the counselor's actions. The court held that the counselor was acting outside the scope of his employment because the employee knew that his employer forbade such conduct. *See* ***id.*** at 807. The employee undisputedly stepped aside from the clinic's business to "procure a purely personal benefit[.]" *See* ***id.***

¶21　Relying on these principles, we conclude that the facts alleged in this case establish that Foley's alleged conduct was obviously to procure a purely personal, albeit reprehensible, benefit in the form of illegal sexual contact with a minor. Such actions were not in the interest of BBBS. Contrary to Doe's argument that BBBS's guidance to volunteers provided ideal opportunities for pedophiles, none of the facts suggest that Foley's alleged actions were committed to serve BBBS in any way. Indeed, Foley's deposition testimony establishes that Foley understood that BBBS prohibited sexual contact with minors and that BBBS's mission was to foster a safe environment for youth mentorship. Foley acknowledged that the purpose of his volunteer position with BBBS was to encourage at-risk youth to improve academically, strengthen family relationships, and avoid dangerous activities. Because the facts undisputedly establish that the alleged sexual contact between Foley and Doe would have been for Foley's own illicit and inexcusable motivations, and not in service to BBBS, we conclude that the circuit court appropriately granted summary judgment in favor of BBBS.

**Doe's Claim of Negligent Hiring, Training, and Supervision Against BBBS**

¶22    Doe contends that BBBS's "liability for its negligence in approving, retaining and supervising Foley also should have been presented to a jury." (Capitalization and bolding omitted.)  Specifically, Doe contends that the circuit court erred in relying on our supreme court's decision in *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 580 N.W.2d 233 (1998), when it determined that there was no causal nexus between Foley's criminal history and the alleged assaults.

¶23    *Miller* recognized the tort of negligent hiring, training, and supervision.  *See id.* at 274.  The court in *Miller* first observed that the general elements of negligence require proof of a duty of care, a breach of that duty, a causal connection between the conduct and the injury, and damages.  *See id.* at 260.  As to cause, the issue is whether the employer's failure to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury.  *See id*. at 261.  "In other words, there must be a nexus between the negligent hiring, training, or supervision and the act of the employee."  *Id.* at 262.

¶24    This nexus involves two questions.  The first question is whether the employee's wrongful act caused the plaintiff's injury.  *See id.*  The second is whether the employer's negligence was a cause of the employee's wrongful act.  *See id.*  "[T]he negligence of the employer must be connected to the act of the employee."  *Id.*  "[I]f the wrongful act of the employee was a cause-in-fact of the plaintiff's injury, then the trier of fact must further determine if the failure of the employer to exercise due care in the ... supervision of the employee was a cause-in-fact of the act of the employee which caused the injury."  *Id.* at 262-63.

¶25 Doe argues that the circuit court's reliance on *Miller* was misguided because *Miller* was not decided on summary judgment, but rather it involved a jury trial. Moreover, Doe contends that but for BBBS's decision to accept Foley as a volunteer, despite his criminal history, Doe would not have been harmed. Doe also contends that BBBS was negligent in its supervision of Foley, in that it was unaware of the fact that Foley was having sleepovers with Doe and that Foley was providing Doe with lavish gifts.

¶26 It is undisputed that Foley had an extensive criminal history when he was accepted as a BBBS volunteer. Foley had multiple convictions for issuing worthless checks and for operating while intoxicated. He also was convicted for theft. Indeed, Foley was on probation for one of the issuance of worthless checks convictions when he applied to BBBS. However, we reject Doe's "but for" argument because the relevant question is whether BBBS knew, or should have known, that Foley posed a foreseeable risk of sexually harming Doe. All of Foley's prior convictions involved non-violent, non-sexual offenses. Danielle Fischer, an Enrollment and Match Specialist with BBBS, testified at her deposition that either she, or another BBBS agent, conducted both a state and national background check on Foley and searched for Foley's name on the national sex offender registry. Fischer stated that she discussed Foley's application with her supervisor and determined that Foley's criminal background would not pose a safety risk to Doe. She also stated that at the time BBBS accepted Foley as a volunteer, Foley indicated that he had been five years sober. Fischer stated that she did not review information pertaining to Foley's sentences for his various convictions, thus admitting that she was unaware of Foley's probation status, but stated that knowledge of Foley's probation status would not have automatically excluded him from consideration as a volunteer.

¶27    Foley himself stated in deposition testimony that he understood the greater purpose of BBBS, that he understood the BBBS rules of conduct and the prioritization of child safety, and that he understood the prohibition of sexual contact with minors.

¶28    Foley's prior convictions for financial crimes and operating while intoxicated do not create a question of fact as to whether BBBS knew or should have known that Foley posed a foreseeable risk of sexual harm to Doe.  None of the evidence presented reflected a propensity for Foley to commit a sexual crime.  Accordingly, we agree with the circuit court that there is no nexus, as a matter of law, between Foley's prior convictions and his alleged acts of sexual assault.  Therefore, summary judgment was appropriate.

**Doe's Claim for Coverage Against First Nonprofit**

¶29    Doe contends that "the policy issued by First Nonprofit to BBBS provides coverage for BBBS's negligent acts and for Foley's conduct."  (Capitalization and bolding omitted.)  Having established that no genuine issues of material fact exist as to BBBS's negligence in this matter, we only address whether the First Nonprofit policies provide coverage for Foley's alleged actions.

¶30    The circuit court ultimately determined that neither of the First Nonprofit policies provided coverage for Doe's claims against Foley because Foley did not qualify as an "insured" under the policies.  The circuit court stated "the allegations of abuse within the complaint are not within the scope of [Foley's] duties as a volunteer Big Brother."  Although we interpret an insurance policy's terms without deference to the circuit court's decision, *see* ***Kaun v. Industrial Fire & Cas. Ins. Co.***, 148 Wis. 2d 662, 667, 436 N.W.2d 321 (1989), we agree with the circuit court's analysis in this case.

12

¶31    "The construction of words and phrases in insurance policies is generally a matter of law and is controlled by the same rules of construction as are applied to contracts generally." *Kremers-Urban Co. v. American Emp'rs Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). "Where no ambiguity exists in the terms of the policy, we will not engage in construction, but will merely apply the policy terms." *Id.* at 736.

¶32    First Nonprofit issued both a primary and an umbrella policy to BBBS as the named insured. The policy defines "insured" as "you and all of your executive officers and directors, trustees, but only while acting within the scope of their duties as such[,]" and includes "[y]our volunteers but only while acting at your direction and within the scope of their duties." The primary policy states, as relevant, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages arising out of sexual abuse occurrences to which this insurance applies." The umbrella policy provided that First Nonprofit would pay on behalf of BBBS all sums in excess of the First Nonprofit Primary Policy that BBBS becomes legally obligated to pay as damages because of injury to which the policy applied. Doe contends that under the policy language, First Nonprofit must provide coverage for any damage arising from sexual abuse. This analysis turns on whether Foley is even an insured as defined in the policy. We conclude that he is not.

¶33    In applying the policy to Foley's alleged conduct, we conclude that the alleged conduct did not constitute activities performed while acting at BBBS's direction and within the scope of Foley's duties. *See Employers Mut. Cas. Co. v. Horace Mann Ins. Co.*, 2005 WI App 237, ¶9, 287 Wis. 2d 418, 707 N.W.2d 280. While the scope of Foley's duties involved spending one-on-one time with Doe, any alleged sexual misconduct during those meetings "was so extraordinary and

13

too disconnected from the type of services ordinarily contemplated." *See id.*, ¶10. Indeed sexual misconduct was expressly prohibited and would have defeated the very purpose of an organization promoting the betterment of children's lives. Foley's alleged conduct is not covered by the First Nonprofit policies.

¶34    Because we conclude that the circuit court appropriately granted summary judgment in this matter, there is no need for us to address Doe's claims for punitive damages.  For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.