# 2023 UT App 49

## THE UTAH COURT OF APPEALS

ALYSSA AGUILA,
Appellant,
*v.*
PLANNED PARENTHOOD OF UTAH AND
ADRIANA RODRIGUEZ NAVARRO,
Appellees.

Opinion
No. 20210457-CA
Filed May 11, 2023

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 210900821

Sarah Elizabeth Spencer and Kristen C. Kiburtz,
Attorneys for Appellant

Bradley M. Strassberg, Attorney for Appellee
Planned Parenthood of Utah

Richard A. Bednar and John E. Keiter, Attorneys for
Appellee Adriana Rodriguez Navarro

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1     Alyssa Aguila sued both Planned Parenthood of Utah and
Adriana Rodriguez Navarro for negligence and breach of
fiduciary duty, claiming that Navarro—a medical assistant at
Planned Parenthood—had publicized Aguila's private health
information and that Planned Parenthood was vicariously liable
for Navarro's actions. Aguila also made direct claims against
Planned Parenthood for negligent hiring, training, and

supervision. The district court dismissed all claims under a variety of theories, including failure to comply with Utah's prelitigation procedure under the Health Care Malpractice Act (the Act) as to Navarro. *See* Utah Code §§ 78B-3-401 to -426. Aguila appeals the dismissal. We reverse in part and affirm in part.

BACKGROUND

¶2 In February 2019, Aguila underwent an abortion procedure at Planned Parenthood. During Aguila's visit to the clinic, she saw an acquaintance, Navarro, who worked as a medical assistant for Planned Parenthood. Not long after the procedure, Aguila discovered that Navarro had revealed details about Aguila's procedure to mutual friends and acquaintances and even shared information about it on social media. Those Navarro informed were not involved in Aguila's medical care. As a result of Navarro's disclosure, private information about the abortion became known to friends, family, and other members of the community.

¶3 Aguila filed a notice of intent to initiate a malpractice claim against Planned Parenthood under the Act. The notice was served on Planned Parenthood but not on Navarro. In January 2021, Aguila received a certificate of compliance from the Utah Division of Occupational and Professional Licensing, stating that she had satisfied the prelitigation procedures outlined in the Act for her claim against Planned Parenthood.

¶4 Aguila then filed a complaint against both Planned Parenthood and Navarro. Aguila sued Navarro for negligence and breach of fiduciary duty. Aguila alleged that Planned Parenthood, as Navarro's employer, was vicariously liable for Navarro's negligence and breach of fiduciary duty. Aguila also made a direct claim against Planned Parenthood for negligent hiring, training, and supervision of Navarro.

¶5     Planned Parenthood filed a motion to dismiss Aguila's complaint under rule 12(b)(6) of the Utah Rules of Civil Procedure for failure to state a legal claim and rule 12(b)(1) for lack of jurisdiction. Planned Parenthood's argument was threefold. First, it argued that Aguila could not sue Navarro because Aguila had not served Navarro with a notice of intent to commence action under the prelitigation requirements of the Act. Navarro filed a motion joining that argument. This lack of service, Planned Parenthood argued, resulted in a jurisdictional defect that "renders dismissal of <u>all</u> [Aguila's] claims—each of which ultimately charges that she was harmed by the failure to render appropriate health care—proper."

¶6     Second, Planned Parenthood asserted that it could not be held vicariously liable for Navarro's actions because her actions were not within the scope of her employment. Specifically, Planned Parenthood argued that Navarro's disclosure violated the Health Insurance Portability and Accountability Act (HIPAA), which could expose Planned Parenthood to "potential civil and criminal sanctions." *See* 42 U.S.C. § 1320d-6(a) ("A person who knowingly and in violation of this part . . . discloses individually identifiable health information to another person, shall be punished as provided [herein]."). Planned Parenthood argued that such an illegal act "could not be viewed as an act incident to employment" nor serve Planned Parenthood's interests. Planned Parenthood thus argued that Navarro's "dissemination of protected health information" could not—as a matter of law—"be the subject of a claim for vicarious liability."

¶7     Third, Planned Parenthood asserted that to be vicariously liable, it had to have "control of Navarro when she made the purported disclosure." But Planned Parenthood argued that Aguila failed "to allege, even upon information and belief, that Navarro was employed by [Planned Parenthood] at the time of her purported disclosure." Absent such an allegation, Planned Parenthood argued that Aguila's complaint failed to state "any

claim" against Planned Parenthood. In other words, Planned Parenthood argued that without an employment relationship pled, there was no basis to assert that Planned Parenthood had any control over Navarro, the lack of which precluded Aguila's claims.

¶8      The district court agreed with Planned Parenthood's arguments and dismissed Aguila's complaint on all claims and against all parties.

¶9      First, it ruled that Aguila's complaint against Navarro failed for lack of jurisdiction because Navarro was never served with a notice of intent to sue as required by the Act. *See* Utah Code § 78B-3-412(1)(a) ("A malpractice action against a health care provider may not be initiated unless and until the plaintiff . . . gives the prospective defendant . . . at least 90 days' prior notice of intent to commence an action . . . ."). Asserting that Aguila did "not dispute" that Navarro was a "health care provider," *see id.* § 78B-3-403(13), or that the claims Aguila raised in her complaint constituted a "malpractice action against a healthcare provider," *see id.* § 78B-3-403(18), the court concluded that Aguila was required to serve notice on Navarro and that her failure to do so resulted in a lack of jurisdiction, *see* Utah R. Civ. P. 12(b)(1).

¶10      Second, the court determined that Navarro's actions were not within the scope of her employment. Specifically, the court noted that because the purported disclosure could subject Planned Parenthood to "civil and criminal penalties," Navarro's actions could not—as a matter of law—fall within the scope of her employment. Somewhat perplexingly, as we will point out, the court also determined that Aguila's complaint failed "to allege that any purported act of Navarro was performed while she was employed by" Planned Parenthood. Given these supposed defects, the court concluded that Aguila's complaint failed to state a claim upon which relief could be granted." *See id.* R. 12(b)(6). Aguila appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Aguila first argues that the district court incorrectly concluded that she failed to sufficiently plead that Navarro was an employee of Planned Parenthood at the time of the disclosure. Second, Aguila asserts that the court erred in concluding that because Navarro's disclosure of the protected information could expose Planned Parenthood to criminal or civil liability, such disclosure could not, as a matter of law, be within the course and scope of employment. Both issues share the same standard of review. "A rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts. The propriety of a 12(b)(6) dismissal is a question of law. Accordingly, we give the trial court's ruling no deference and review it under a correctness standard." *Helf v. Chevron U.S.A., Inc.*, 2009 UT 11, ¶ 14, 203 P.3d 962 (cleaned up).

¶12 Third, Aguila argues that the court incorrectly ruled that "Navarro was a 'health care provider' and that her conduct constituted a 'malpractice claim' under the Act." Aguila asserts that this incorrect interpretation of the Act resulted in the district court concluding that Aguila's claims against Navarro were "subject to the prelitigation requirements" of the Act, which in turn resulted in the court determining that it lacked jurisdiction over Aguila's individual claims against Navarro because Aguila did not comply with the notice requirements of the Act. A dismissal made under rule 12(b)(1) "presents a question of law that we review for correctness." *Salt Lake County v. State*, 2020 UT 27, ¶ 14, 466 P.3d 158 (cleaned up). And we review questions of statutory interpretation for correctness. *See Biesele v. Mattena*, 2019 UT 30, ¶ 31, 449 P.3d 1.

ANALYSIS

I. Employment Issues

¶13 The Utah Rules of Civil Procedure require a plaintiff to plead facts "showing that the party is entitled to relief." *See* Utah R. Civ. P. 8(a). Under this standard, a motion to dismiss "should be granted only if, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275 (cleaned up); *see also* Utah R. Civ P. 12(b)(6). Thus, "we will affirm the dismissal of a complaint only where it clearly appears that the plaintiff would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Hudgens*, 2010 UT 68, ¶ 14 (cleaned up). Stated in the reverse, "[t]o survive a motion to dismiss, the complaint must allege facts sufficient to satisfy each element of a claim, otherwise the plaintiff has failed to show that she is entitled to relief." *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 60, 416 P.3d 401.

A.      Employer–Employee Relationship

¶14 Aguila first asserts that the district court erred when it concluded that she failed to plead any facts that established that Navarro was an employee of Planned Parenthood at the time of the alleged disclosure. We agree.

¶15 The district court—in a somewhat cursory fashion and without providing any analysis of Aguila's complaint—simply stated, "[T]here is no dispute that [Aguila's complaint] fails to allege that any purported act of Navarro was performed while she was employed" by Planned Parenthood. As Planned Parenthood contends, "Because Aguila acknowledged her failure to allege, even upon information and belief, that Navarro was employed by [Planned Parenthood] at the time of her purported disclosures,

the district court properly dismissed" Aguila's complaint. But Aguila didn't concede the point, and such a conclusion cannot be sustained on the record here—the four corners of the complaint.

¶16 Aguila was indeed required to plead facts asserting that Navarro was employed by Planned Parenthood at the time of the disclosure. "Under the doctrine of respondeat superior, an employer may be held vicariously liable for the acts of its employee if the employee is acting in the course and scope of . . . employment *at the time* of the act giving rise to the injury." *Sutton v. Byer Excavating, Inc.*, 2012 UT App 28, ¶ 7, 271 P.3d 169 (emphasis added) (cleaned up); *see also Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1385 (Utah 1996) ("[T]o establish [an employer's] liability for [an employee's] tortious conduct, [a plaintiff must] demonstrate that . . . an employer–employee relationship existed . . . at the time the tort occurred.").

¶17 Aguila adamantly asserts that she never acknowledged or conceded that she failed to plead the existence of an employer–employee relationship. She argues, on the contrary, that her complaint referenced the relationship multiple times. Her complaint contains numerous statements that Navarro was an employee of Planned Parenthood, for example (with our emphases):

- "The standard of care required Ms. Navarro to keep Ms. Aguila's medical information confidential throughut her *employment* at Planned Parenthood . . . ."

- "Defendant Planned Parenthood is vicariously liable for Ms. Navarro's actions as Ms. Navarro's *employer*."

- "Defendant Planned Parenthood hired Ms. Navarro as an *employee* of Planned Parenthood. . . . Ms. Navarro failed to maintain confidentiality of Ms. Aguila's medical information."

- "Planned Parenthood is vicariously liable for Ms. Navarro's actions as an *employee* of Planned Parenthood."

- "Defendant Planned Parenthood had a duty to supervise Ms. Navarro as an *employee* of Planned Parenthood."

- "Defendant Planned Parenthood breached their duty by negligently supervising Ms. Navarro as an *employee* of Planned Parenthood."

- "Planned Parenthood is vicariously liable for Ms. Navarro's action as Ms. Navarro's *employer*."

- "The standard of care requires Planned Parenthood and its *employees* to not disclose personal medical information to those outside a patient's medical providers."

- "The failure of Planned Parenthood and its *employees* to keep Ms. Aguila's medical information confidential breached the duty of care."

And in the following allegation, Aguila pled that Navarro was employed at the time of the disclosure: "Navarro was acting in the course and scope of her *employment* or contractual relationship *at times discussed herein*." (Emphases added.)

¶18 Planned Parenthood describes these pleadings as "legal conclusions [that] cannot stave off dismissal." But Aguila's pleadings are not unadulterated legal conclusions void of pled facts. As the final above-quoted allegation demonstrates, Aguila pled that Navarro was employed by Planned Parenthood at the "times discussed" in the complaint, at least implicitly including the "time" when Navarro allegedly disclosed that Aguila had undergone an abortion procedure. "On appeal from a motion to dismiss, we must accept the factual allegations in the complaint as true and view all reasonable inferences from them in the light

most favorable to the plaintiff." *Pang v. International Document Services*, 2015 UT 63, ¶ 3, 356 P.3d 1190 (cleaned up). Applying this standard, we have little trouble concluding that Aguila pled facts that, at least inferentially, led to the singular conclusion that Navarro was employed by Planned Parenthood when the alleged disclosure was made. Any other reading requires us to draw inferences unfavorable to Aguila, something we are not permitted to do at this procedural stage.

¶19 Thus, the district court erred in concluding that Aguila failed to plead facts that an employer–employee relationship existed between Planned Parenthood and Navarro at the time of the disclosure.

B.      Course and Scope of Employment

¶20 Aguila also takes exception to the district court's ruling that Navarro's conduct could not, as a matter of law, be within the course and scope of employment because her disclosure of protected information potentially exposed Planned Parenthood to civil and criminal liability. In the district court's words,

> To hold [Planned Parenthood] liable, each of the claims [Aguila] asserts relies on an underlying theory that Navarro's purported disclosure was performed in the course and scope of her employment. Because Navarro's purported disclosure would violate HIPAA and subject [Planned Parenthood] to civil and criminal penalties, such would not be within the scope of Navarro's employment as a matter of law.

We agree with Aguila that the court erred in this ruling.

¶21 The notion that an employee's illegal conduct can never (i.e., as a matter of law) fall within the course and scope of employment is simply not supported by our caselaw. Rather,

under Utah law, an employee's acts fall within the course and scope of employment if (1) the employee's "conduct is of the general kind" the employee "is employed to perform" and (2) the employee's "acts were motivated, at least in part, by the purpose of serving the" employer's "interest." *See M.J. v. Wisan*, 2016 UT 13, ¶¶ 54–55, 371 P.3d 21 (cleaned up). Put another way, "acts falling within the scope of employment are those acts which are so closely connected with what the [employee] is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, *even though quite improper ones*, of carrying out the objectives of employment." *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994) (emphasis added) (cleaned up). "Accordingly, an [employee] does not cease to act within the course of . . . employment merely because [the employee] engages" in an illegal activity. *See Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 26, 61 P.3d 1009 (cleaned up); *see also Clark v. Pangan*, 2000 UT 37, ¶ 26, 998 P.2d 268 (concluding that "under Utah law, it is possible for the intentional tort of battery to be within the scope of a person's employment"); *Phillips v. JCM Dev. Corp.*, 666 P.2d 876, 882–83 (Utah 1983) (concluding that an employee's tortious conduct involving real estate fraud was within the scope of employment). Our supreme court has observed that "an employer is vicariously liable for an employee's intentional tort if the employee's purpose in performing the acts was either wholly or only in part to further the employer's business, even if the employee was misguided in that respect." *Hodges v. Gibson Products Co.*, 811 P.2d 151, 156 (Utah 1991).

¶22    And rather than being a question of law, the inquiry of "[w]hether an employee is acting within the scope of . . . employment is ordinarily a question of fact." *See Christensen*, 874 P.2d at 127; *see also Wisan*, 2016 UT 13, ¶¶ 61–62 (stating that it is the task of the "factfinder" to conclude whether an agent acted in the scope of employment when committing an illegal act); *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 10, 197 P.3d 654 ("Whether an employee is in the course and scope of his

employment . . . presents a question of fact for the fact-finder."). It is only "when the employee's activity is so clearly within or outside the scope of employment that reasonable minds cannot differ [that] the court may decide the issue as a matter of law." *Christensen*, 874 P.2d at 127.[1]

¶23   This is not a case where "reasonable minds cannot differ" about the complained of conduct being outside the scope of employment. *See id.* Indeed, cases from other jurisdictions have concluded that the issue of whether the disclosure of protected medical information—even in violation of HIPAA—could fall within the scope of employment is a question of fact that is usually reserved for the factfinder. *See Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 104–105, 108 (Ind. Ct. App. 2014) (reasoning that whether a pharmacist's disclosure of private medical information was within the scope of employment was "properly determined by the jury rather than as a matter of law"); *Parker v. Carilion Clinic*, 819 S.E.2d 809, 814, 822 (Va. 2018) (holding that whether the disclosure of private medical information in violation of HIPAA was within the scope of employment is a "question . . . for the jury" (cleaned up)); *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 988–89, 994, 996 (Ill. 2007) (affirming a summary judgment ruling that an employee's disclosure of the results of a pregnancy test to

---

1. Furthermore, the "reasonable minds cannot differ" standard is typically employed in the context of a motion for summary judgment. *See, e.g.*, *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 33, 423 P.3d 1150 ("A court must grant summary judgment if reasonable minds cannot differ as to the inferences to be drawn from the undisputed facts." (cleaned up)). This is in contrast to a motion to dismiss, where the challenge is about the right to relief—as a matter of law—on facts that are presumed to be true. *See Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 ("A Rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts.").

a third party fell outside the scope of employment when hospital policies expressly forbade such disclosure but noting that "an act of an employee, although forbidden, may be within the scope of employment"); *Korntved v. Advanced Healthcare, SC*, 2005 WI App 197, ¶¶ 1, 3, 12, 704 N.W.2d 597 (affirming a summary judgment ruling that a lab technician's disclosure of medical information to a third party in violation of a health care provider's policies fell outside the scope of employment while noting that "whether an employee acts within the scope of his or her employment is *generally* a fact issue to be decided by a jury" and "questions of intent can *rarely* be resolved by the court as a matter of law" (cleaned up)).

¶24　Similarly, here the issue of the course and scope of employment presents a question of fact and was not properly decided in the context of a motion to dismiss. The complaint was silent regarding Planned Parenthood's policies concerning maintaining patient confidentiality. Nor was there evidence about whether Navarro had ever been apprised of Planned Parenthood's confidentiality policies. The court had before it only Aguila's complaint alleging that Navarro, an employee of Planned Parenthood, had divulged protected information about Aguila to third parties. The district court was required to assume "the truth of the allegations in the complaint and draw[] all reasonable inferences therefrom in the light most favorable" to Aguila. *See Rusk v. University of Utah Healthcare Risk Mgmt.*, 2016 UT App 243, ¶ 5, 391 P.3d 325, *cert. denied*, 390 P.3d 727 (Utah 2017). Keeping in mind the procedural posture of this case—dismissal under rule 12(b)(6) for failure to state a claim upon which relief could be granted—we conclude that the district court erred in ruling that Navarro's improper disclosure fell outside the scope of employment merely because it potentially exposed Planned Parenthood to civil and criminal liabilities under HIPAA or otherwise. However, we note that this issue—even though it involves a question of fact—might be resolved on summary judgment if the undisputed facts show that Navarro's conduct

was so clearly within or outside the scope of her employment that reasonable minds could not differ. *See Bagent*, 862 N.E.2d at 988–89, 994, 996; *Korntved*, 2005 WI App 197, ¶¶ 1, 3, 12. But those undisputed facts have not yet been established here. Thus, the district court erred in dismissing Aguila's complaint when it determined that Navarro's actions fell outside the course and scope of her employment at Planned Parenthood in the absence of undisputed facts to support that conclusion.

## II. Notice Requirement Under the Act

¶25 Aguila argues that the district court incorrectly ruled that Navarro was a health care provider and that Aguila's claims against Navarro constituted a malpractice claim, which determinations supported the court's conclusion that Navarro was covered by the notice provisions of the Act.[2] We find no error in the district court's ruling.

### A. "Health Care Provider"

¶26 Aguila contends that the district court erred in holding that Navarro was a health care provider under the Act. More specifically, Aguila argues that Planned Parenthood did not show as a matter of law that Navarro was a health care provider. But given her own characterization of Navarro's job as a medical assistant, there was very little for Planned Parenthood left to say about whether Navarro was a health care provider under the Act.

---

2. Planned Parenthood argues that this issue was not preserved. Because we resolve this issue on the merits in favor of Planned Parenthood, we need not address the preservation arguments. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." (cleaned up)), *cert. denied*, 496 P.3d 718 (Utah 2021).

¶27    In her complaint, Aguila alleges that Planned Parenthood employed Navarro as a "medical assistant." In her opposition to Planned Parenthood's motion to dismiss, Aguila clarified,

> Navarro was employed as a medical assistant at Planned Parenthood's clinic. As a medical assistant, discussing [a] patient's medical procedures and treatment is common practice as well as answering phones, welcoming patients, scheduling appointments, and corresponding with patients or others.

Thus, according to Aguila, Navarro's position as a medical assistant at Planned Parenthood involved not only clerical tasks handling patients' private information but also direct interaction with patients related to their medical procedures.

¶28    The Act defines "health care provider" in these terms:

> "Health care provider" includes any person, partnership, association, corporation, or other facility or institution who causes to be rendered or who renders health care or professional services as a hospital, health care facility, physician, physician assistant, registered nurse, licensed practical nurse, nurse-midwife, licensed direct-entry midwife, . . . or others rendering similar care and services relating to or arising out of the health needs of persons or groups of persons and officers, employees, or agents of any of the above acting in the course and scope of their employment.

Utah Code § 78B-3-403(13).

¶29    "In matters of statutory construction, the best evidence of the true intent and purpose of the Legislature in enacting an Act is the plain language of the Act." *Platts v. Parents Helping Parents*,

947 P.2d 658, 662 (Utah 1997) (cleaned up). And here, as our supreme court has explained, "the statute . . . is not ambiguous." *Id.* The Act identifies three distinct categories of health care providers. The first category includes those commonly regarded as health care providers—hospitals, doctors, and nurses. *See* Utah Code § 78B-3-403(13). The second category comprises "others rendering similar care and services relating to or arising out of the health needs of persons." *See id.* The third category encompasses employees or other agents of any entity or person in the first two categories "acting in the course and scope of their employment." *See id.*

¶30    Even if the term "medical assistant" is not explicitly listed among the individual professions identified as health care providers in the first category, there can be no argument that Navarro was an employee of Planned Parenthood who offered "services relating to or arising out of the health needs" of Planned Parenthood's patients. She was a medical assistant who, according to Aguila, was directly involved in discussing medical procedures with patients, as well as handling various clerical tasks involving patients' personal information. In short, even construing all the statements in the complaint as true and giving every inference to Aguila, under the facts pled, her claims were against Navarro in her capacity as a health care provider. Accordingly, we see no error in the district court's conclusion that Navarro was a health care provider under the Act.

B.    "Health Care"

¶31    Aguila contends that the district court erred in concluding that Navarro's disclosure of private medical records constituted "health care" as that term is defined under the Act.

¶32    The Act defines a malpractice action as "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of *health care* rendered

or which should have been rendered by the health care provider." Utah Code § 78B-3-403(18) (emphasis added). "Health care," as statutorily defined, includes "act[s] or treatment performed or furnished . . . by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 78B-3-403(11).

¶33 Addressing the nature of a malpractice action, our supreme court has explained that "once we determine that health care was rendered . . . by a health care provider, we then look to the relationship between that health care and the patient's injuries." *Scott v. Wingate Wilderness Therapy, LLC*, 2021 UT 28, ¶ 67, 493 P.3d 592 (cleaned up). Those "injuries must relate to or arise out of the health care rendered by the health care provider." *Id.* (cleaned up). In other words, "the injury must originate from or be connected to something a health care provider did or should have done in the course of providing health care to that patient." *Id.*

¶34 Here, this is exactly what Aguila alleges in her complaint. She underwent an abortion procedure (i.e., "health care was rendered"). *See id.* (cleaned up). Then, allegedly, a health care provider (i.e., Navarro) caused her to suffer "damages including mental distress, mental anguish, tarnish to her reputation, anxiety, and depression" by divulging private medical information about the procedure to third parties. In sum, Navarro provided "health care" as a "health care provider," and her actions done in the course of providing that health care to Aguila fell subject to the jurisdictional prelitigation requirements of the Act.

¶35 As a point of clarification, this jurisdictional defect extends only to Aguila's individual claims against Navarro. It is unclear whether Planned Parenthood argued below that the lack of notice to Navarro resulted in a jurisdictional defect with respect to just Planned Parenthood, just Navarro, or both. The district court

appears to have decided not to extend the jurisdictional defect present in Aguila's claims against Navarro to Aguila's claims against Planned Parenthood. Instead, the court determined that (1) there was a lack of jurisdiction with respect to the claims against Navarro individually and (2) Planned Parenthood could not be held vicariously liable because (a) Aguila had not pled an employment relationship and (b) the disclosure was not within the scope of employment. If the court had concluded that the jurisdictional defect extended to both parties, there obviously would have been no reason for it to address vicarious liability.

¶36 In sum, we see no error in the district court's conclusion that the claims Aguila raised against Navarro alleged malpractice as defined by the Act.

CONCLUSION

¶37 We conclude that the district court erred in dismissing Aguila's complaint against Planned Parenthood. Specifically, the district court erred in concluding that Aguila had not pled that an employer–employee relationship existed between Planned Parenthood and Navarro at the time of the alleged disclosure and that Navarro's disclosure was, as a matter of law, outside the course and scope of employment. However, the district court correctly dismissed Aguila's malpractice claims against Navarro on the grounds that it lacked jurisdiction owing to Aguila's failure to observe the prelitigation requirements of the Act with regard to Navarro. We therefore affirm the district court's dismissal of Aguila's claims against Navarro but reverse the dismissal of Aguila's claims—both direct and vicarious—against Planned Parenthood. We remand this case for further proceedings consistent with this opinion.

_____